**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MITCHELL TAYLOR BUTTON; DUSTY BUTTON,<br><br>                     Plaintiffs,<br><br>  v.<br><br>CRAIG LOPRESTI,<br><br>                     Defendant. | Case No.: 25-cv-00867-DMS-BJW<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANT'S MOTION TO DISMISS [ECF No. 16];**<br><br>**(2) DENYING DEFENDANT'S REQUEST FOR JUDICIAL NOTICE [ECF No. 22]; and**<br><br>**(3) DENYING PLAINTIFFS' MOTION TO STRIKE [ECF No. 23]** |

      Pending before the Court is Defendant's motion to dismiss Plaintiffs' Complaint ("Motion to Dismiss"). (MTD, ECF No. 16). Plaintiffs Mitchell and Dusty Button, proceeding pro se, filed a response in opposition ("Opposition"). (Opp'n, ECF No. 20). Defendant filed a reply ("Reply"), (Reply, ECF No. 21), and a request for judicial notice, (Req., ECF No. 22). Also pending before the Court is Plaintiffs' motion to strike Defendant's Reply and request for judicial notice, or in the alternative, to file a sur-reply ("Motion to Strike"). (Mot. to Strike, ECF No. 23). Defendant did not respond to the

Motion to Strike. This matter is suitable for resolution without oral argument pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 24). For the following reasons, the Court grants Defendant's Motion to Dismiss; denies Defendant's request for judicial notice; and denies Plaintiffs' Motion to Strike.

## I. BACKGROUND

### A. The Parties

The Court accepts Plaintiffs' allegations as true for purposes of resolving the Motion to Dismiss. Dusty Button was a world-renowned and well-known ballet dancer. (*See* Compl. ¶¶ 24–26). She accumulated nearly half a million followers and subscribers on Instagram up until December 2021, when she deleted her social media account "after succumbing to trauma from severe cyber bullying and harassment." (*Id.* ¶ 28). Mitchell Button was a part of "Button Built," a team and brand for automotive design, builds, and work in the automotive industry. (*Id.* ¶ 29). Mitchell Button also had nearly half a million followers and subscribers on his Instagram account, "@button_built." (*Id.* ¶ 32). He also deleted his social media account in 2021 after "succumbing to trauma from severe cyber bullying and harassment." (*Id.* ¶ 35). Plaintiffs' businesses, goods, and services were "directly sourced and provided from their good names, talent, expertise, reputations, skills, manufacturing and marketing capabilities, which were completely destroyed in 2021 by false allegations in a civil lawsuit" described below. (*Id.* ¶ 37 (emphasis omitted)).

Defendant operates a YouTube channel, "@TheCraig909," with nearly two hundred and thirty thousand subscribers and an Instagram page, "@thecraig909," with nearly one hundred and fifty thousand followers. (*Id.* ¶ 3). Defendant was a former competitor of Mitchell Button in the automotive industry, and was aware of Plaintiffs' reputation in the industry. (*Id.* ¶¶ 11, 53).

### B. The Nevada Lawsuit

In July 2021, Plaintiffs were sued in the United States District Court of Nevada for $131,000,000 ("Nevada Lawsuit"). (*Id.* ¶ 4). The Nevada Lawsuit involved allegations of sexual assault. (*See id.* ¶ 9). The Nevada Lawsuit was publicized in thousands of articles,

televised on news and media outlets such as Good Morning America, and published on social media pages and channels. (*Id.* ¶ 5). The coverage of the Nevada Lawsuit states that Plaintiffs were sued in a civil action. (*Id.*). The Nevada Lawsuit does not state that Plaintiffs were arrested, charged, or incarcerated for the related allegations or any other crime. (*Id.* ¶ 6). Notably, Plaintiffs were not charged with any crime and never arrested. (*Id.* ¶¶ 6, 45). Further, publicly available filings in the Nevada Lawsuit state that multiple police departments refused to "entertain the factual allegations" against Plaintiffs because the "allegations were 'inconsistent' with evidence provided, that the statements made to the police . . . were unfounded and that even the Buttons themselves, had filed reports against themselves to prove that the allegations against them were false." (*Id.* ¶ 6). On January 6, 2025, Plaintiffs filed a motion for summary judgment in the Nevada Lawsuit. (*Id.* ¶ 7). Plaintiffs uploaded a redacted version of the motion for summary judgment to their Instagram page, "@WeTheButtons," which is "solely dedicated to providing anyone who follows the Buttons with accurate information about the [Nevada Lawsuit]." (*Id.*). Defendant followed Plaintiffs' Instagram page. (*Id.*).

### C. The Alleged Defamation

A third-party Instagram page, "@trail.huntr," posted to Instagram a photo of Mitchell Button's automotive work. (*Id.* ¶¶ 54, 55). On January 27, 2025, Defendant posted a comment on the Instagram post, stating the Buttons were "locked up for some f*cked up stuff" and that it was a "shame they weren't good people." (*Id.* ¶¶ 8, 54). This post was "shared" at least three hundred and twenty two times. (*Id.* ¶ 56). Defendant's comments were posted to hundreds of thousands of people who follow him on social media. (*Id.* ¶ 8). At the time Defendant made his Instagram comments, Plaintiffs were "*finally* able to put the destruction of horrendous, false allegations behind them and continue business relationships with third parties which were previously broken due to those false allegations." (*Id.* ¶ 8 (emphasis added)). According to Plaintiffs, Defendant knew that his comments were "entirely and utterly false and defamatory" and he acted with "actual malice." (*Id.* ¶¶ 9, 39). Defendant soon after deleted his comments and blocked Plaintiffs

on social media. (*See id.* ¶ 49). "Defendant has deleted related evidence which would prove that . . . Defendant further defamed . . . Plaintiffs on other platforms including his YouTube channel which has nearly two hundred and thirty thousand subscribers." (*Id.* ¶ 50).

Additionally, Defendant's comments "encouraged others to make false and defamatory statements about the Buttons including but not limited to a statement made by one of [Defendant's] followers which stated the Buttons were 'locked up for human trafficking.'" (*Id.* ¶ 57). Defendant's statements were made "for the purpose of intentionally misleading former sponsors, former employers and former business affiliates of the Buttons, and to prevent them from securing prospective contractual agreements, agreements which were already in place and which had been formerly broken due to the defamatory global media campaign waged against them in 2021 but were repaired." (*Id.* ¶ 58). Defendant intentionally interfered with contracts of Plaintiffs. (*Id.* ¶ 59). Because of Defendant's statements, Plaintiffs have been "deprived of work, prospective contracts and repaired business relationships." (*Id.* ¶ 61). Additionally, Defendant's "power and influence online" intentionally prevented Plaintiffs from repairing their reputations after they were "completely destroyed by a false and defamatory global media campaign waged against them in May and July of 2021." (*Id.* ¶ 11).

### D. Procedural History

Plaintiffs allege (1) defamation per se and (2) tortious interference with contract and prospective economic advantage. (*Id.* at 13–15). Defendant moves to dismiss the entire action under facial and factual challenges pursuant to Federal Rule of Civil Procedure 12(b)(1). (MTD 3–4).

## II.     DEFENDANT'S MOTION TO DISMISS

### A. Legal Standard

Plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). Under Rule 12(b)(1), a party may move to dismiss for lack of subject-matter jurisdiction. *See* Fed. R.

Civ. P. 12(b)(1).  A federal court must dismiss an action if it "determines . . . that it lacks subject-matter jurisdiction."  Fed. R. Civ. P. 12(h)(3).

Rule 12(b)(1) jurisdictional challenges can be either facial or factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'"  *Leite*, 749 F.3d at 1121 (quoting *Safe Air for Everyone*, 373 F.3d at 1039).  When a motion to dismiss makes a facial challenge, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor.  *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).  Conversely, "in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air for Everyone*, 373 F.3d at 1039.  "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  *Id.* (citation omitted).  "The court need not presume the truthfulness of the plaintiff's allegations."  *Id.* (citation omitted).  "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  *Id.* (citation omitted).

**B. Discussion**

Federal jurisdiction over this case is based on diversity pursuant to 28 U.S.C. § 1332(a). (Compl. ¶¶ 18–20).  Under § 1332(a), jurisdiction exists in cases of complete diversity—where each of the plaintiffs is a citizen of a different state from each of the defendants—and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a); *see also Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).  Because the parties do no dispute that there is complete diversity, the only issue is whether the amount in controversy requirement is met.

"The amount in controversy alleged . . . controls so long as the claim is made in good faith." *Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106 (9th Cir.2010) (citation omitted). "To justify dismissal, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* (citation omitted). Under this standard, the good faith allegations in the complaint as to the amount in controversy "suffice to establish the jurisdictional amount unless it appears legally certain that the amount in dispute is $75,000 or less." *Id.* at 1107. Here, "[a]lthough Plaintiffs' claims are based on the similar facts . . . they do not involve a single title or right in which all of the Plaintiffs share a common interest." *Travelers Indem. Co. of Connecticut v. Pulte Grp., Inc.*, No. LACV1808994, 2019 WL 1915760, at *7 (C.D. Cal. Apr. 26, 2019). Thus, Defendant correctly argues that Plaintiffs cannot aggregate their claims and "each [Plaintiff] must meet the jurisdictional threshold." (MTD 4–5 (citations omitted)). That is, the allegations must show that each Plaintiff has a claim for over $75,000.

Plaintiffs seek general and punitive damages and reasonable costs and expenses. (Compl., Prayer for Relief, ¶¶ I, ii). Plaintiffs argue in their Opposition that damages "far exceed[] $75,000 each." (Opp'n 25). However, Plaintiffs fail to allege any facts in their Complaint supporting that conclusion. While Plaintiffs allege that both Plaintiffs have been "deprived of work, prospective contracts and repaired business relationships" because of Defendant's statements, (Compl. ¶ 61), Plaintiffs do not detail the monetary value of these lost business opportunities. Plaintiffs do not provide any monetary amounts or calculation of harm suffered outside a single allegation that the "amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interests and costs." (*Id.* ¶ 20). Such an allegation does not demonstrate that *each* Plaintiff can support a claim for over $75,000. Thus, facially, there are insufficient allegations to show subject matter

jurisdiction. Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss. Plaintiffs' Complaint is **DISMISSED with leave to amend**.[1]

### III.    DEFENDANT'S REQUEST FOR JUDICIAL NOTICE

A court may consider "matters of judicial notice" in ruling on a motion to dismiss. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Defendant seeks judicial notice of "the existence, legal effect and status" of twelve cases in which Plaintiffs were parties to. (Req. 1). However, because the Court did not rely on these cases when deciding the Motion to Dismiss, the Court **DENIES** Defendant's request for judicial notice. *Mikulsky v. Noom, Inc.*, 23-cv-00285, 2024 WL 251171, at *2 n.2 (S.D. Cal. Jan. 22, 2024) (denying the defendant's request for judicial notice of a privacy policy because the Court's analysis under Rule 12(b)(1) did not rely on that policy).

### IV.    PLAINTIFFS' MOTION TO STRIKE

Plaintiffs argue Defendant's Reply "invents new factual and legal theories— claiming Plaintiffs are 'vexatious,' 'public figures,' and 'on government assistance,' and asserting that 'no jury on the planet would award these Plaintiffs anything.'" (Mot. to Strike 9 (citing Reply 10, 11, 17-18)). Plaintiffs also take issue with Defendant's arguments regarding Plaintiffs' other legal matters and Defendant's request for judicial notice. (*See* Mot. to Strike 11–12). Plaintiffs ultimately argue that, under Federal Rule of Civil Procedure 12(f), "the Court should either strike or disregard those portions of Defendant's filings and the New [request for judicial notice] Exhibits." (*See* Mot. to Strike 22). In the alternative, Plaintiffs move to submit a sur-reply. (Mot. to Strike 13–14).

Under Rule 12(f), a court may strike from any pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike under Rule 12(f) are directed to pleadings only." *Goodwin v. AT&T*, No. 2:23-CV-01950, 2024 WL 2866895, at *2 (D. Nev. June 6, 2024). "Thus, a motion to strike is not available to strike

---

[1] In light of this determination, the Court declines to consider Defendant's factual challenge to subject matter jurisdiction. (*See* MTD 6–9).

material contained in motions and other briefs." *Id.* (citation omitted).  Accordingly, Rule 12(f) is the not the appropriate legal basis for Plaintiffs' Motion to Strike.  However, "district courts have inherent power to control their docket," including striking documents and improper filings. *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (internal citation omitted).  In deciding whether to exercise that power, courts consider, in part, "whether striking the filing would 'further the overall resolution of the action.'" *Goodwin*, 2024 WL 2866895, at *2.  The Court did not consider the specific arguments Plaintiffs challenge when ruling on the Motion to Dismiss.  Thus, the Court finds it unnecessary to strike these portions of Defendant's Reply.  Further, the Court denied Defendant's request for judicial notice, negating the need to strike it and the exhibits.  Thus, the Court **DENIES** Plaintiffs' Motion to Strike, including their request to file a sur-reply.

## V. CONCLUSION

Based on the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss **with leave to amend**.  Any amended complaint must be filed within **fourteen (14) days** of the entry of this Order.  In addition, Defendant's request for judicial notice is **DENIED**, and Plaintiffs' Motion to Strike is **DENIED**.

**IT IS SO ORDERED.**

Dated:  December 31, 2025

Hon. Dana M. Sabraw
United States District Judge