

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

MITCHELL TAYLOR BUTTON;
DUSTY BUTTON,

Plaintiffs,

v.

CRAIG LOPRESTI,

Defendant.

Case No.: 25-cv-00867-DMS-BJW

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; DENYING DEFENDANT'S REQUEST FOR JUDICIAL NOTICE; VACATING ORDER TO SHOW CAUSE**

**[ECF Nos. 29, 30, 37, 38]**

Pending before the Court are Defendant's motion to dismiss Plaintiffs' Amended Complaint, (MTD, ECF No. 37-1), and request for judicial notice, (Req., ECF No. 37-3). Plaintiffs Mitchell and Dusty Button, proceeding pro se, responded in opposition ("Opposition"). (Opp'n, ECF No. 33.) Defendant did not file a reply. This matter is suitable for resolution without oral argument pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 35.) For the following reasons, the Court grants in part and denies in part Defendant's

motion to dismiss and denies Defendant's request for judicial notice.[1]

## I.      BACKGROUND

### A. The Parties

The Court accepts the Amended Complaint's allegations as true for purposes of resolving the motion to dismiss.  Dusty Button was a world-renowned and well-known ballet dancer.  (*See* Am. Compl., ECF No. 26, ¶¶ 29–31.)  She accumulated nearly half a million followers and subscribers on Instagram until December 2021, when she deleted her social media account due to "severe cyber bullying and harassment."  (*Id.* ¶¶ 32–33.)  Mitchell Button was a part of "Button Built," a team and brand for automotive design, builds, and work in the automotive industry.  (*Id.* ¶ 34.)  Mitchell Button also had nearly half a million followers and subscribers on his Instagram account, @button_built.  (*Id.* ¶ 37.)  He too deleted this social media account in 2021 because of "severe cyber bullying and harassment."  (*Id.* ¶ 40.)

In Plaintiffs' respective industries, performing arts and automotive work, "economic opportunities arise primarily through reputation, public visibility, and word-of-mouth referrals."  (*Id.* ¶ 58.)  Sponsors, collaborators, and event organizers routinely avoid those associated with and accused of criminal conduct, regardless of whether accusations are true. (*Id.*)  Historically, Plaintiffs generated their income through reputation-based, public-facing sponsorships, events, and collaborations.  (*Id.* ¶ 59.)  Specifically, Dusty Button received approximately $10,000 for attending one event and more than $200,000 in cumulative sponsorships, appearances, and other professional opportunities over time. (*See id.*)  Similarly, Mitchell Button previously received over $150,000 for an automotive event. (*Id.*)  Plaintiffs' businesses, goods, and services were "directly sourced and provided from their good names, talent, expertise, reputations, skills, manufacturing and marketing

---

[1] Defendant originally filed an unsigned motion to dismiss and request for judicial notice.  (*See* ECF Nos. 29-1, 29-3.)  The Court ordered Defendant to show cause why those filings should not be denied pursuant to Federal Rule of Civil Procedure 11(a) ("OSC").  (*See* ECF No. 36.)  Defendant subsequently filed a signed motion to dismiss and request for judicial notice; therefore, the Court **VACATES** the OSC.

25-cv-00867-DMS-BJW

capabilities, which were completely destroyed in 2021 by false allegations in a civil lawsuit" described below. (*Id.* ¶¶ 41, 42 (emphasis omitted).) Plaintiffs contend they have not worked and have been absent from social media since 2021, but have been repairing their reputations. (*Id.* ¶¶ 11, 28.)

Defendant operates a YouTube channel, @TheCraig909, with nearly two hundred and thirty thousand subscribers and an Instagram page, @thecraig909, with nearly one hundred and fifty thousand followers. (*Id.* ¶ 3.) Defendant was a long-time fan and former competitor of Mitchell Button in the automotive industry, and was aware of Plaintiffs' reputations in the industry. (*Id.* ¶¶ 62, 69, 80.)

**B. Nevada Lawsuit**

In July 2021, Plaintiffs were sued in the United States District Court of Nevada for $131,000,000 ("Nevada Lawsuit"). (*Id.* ¶ 4.) The Nevada Lawsuit was publicized in thousands of articles, televised on news and media outlets such as Good Morning America, and published on social media pages and channels. (*Id.* ¶ 5.) The coverage of the Nevada Lawsuit states Plaintiffs were sued in a civil action. (*Id.*) Plaintiffs were never arrested, charged with any crime, or jailed in connection with the allegations contained in the Nevada Lawsuit. (*Id.* ¶ 6.) On January 6, 2025, Plaintiffs filed a motion for summary judgment in the Nevada Lawsuit. (*Id.* ¶ 7.) Plaintiffs posted a redacted version of the motion for summary judgment to their Instagram page, @WeTheButtons, which is "dedicated to providing accurate information about the [Nevada Lawsuit]." (*Id.*) Defendant followed this Instagram page. (*Id.*)

**C. Alleged Defamation**

A third-party Instagram page, @trail.huntr, posted to Instagram a photo of Mitchell Button's automotive work. (*Id.* ¶¶ 63, 64.) On January 27, 2025, Defendant posted a comment on this post, stating the Buttons were "locked up for some f*cked up stuff" and it was a "shame they weren't good people." (*Id.* ¶¶ 8, 48.) The post by @trail.huntr was "shared" at least three hundred and twenty two times, (*id.* ¶ 65), and Defendant's comments were published to hundreds of thousands of people, (*id.* ¶¶ 1, 44).

25-cv-00867-DMS-BJW

According to Plaintiffs, Defendant knew his comments were false and would reach a substantial audience, but did so to prevent Plaintiffs from repairing their reputations and business relationships.  (*Id.* ¶¶ 9, 13, 73.)  Defendant allegedly published his comments with "actual malice."  (*Id.* ¶¶ 44, 72.)  Defendant's comments encouraged others to make false statements about Plaintiffs, including one of his followers, who stated the Buttons were "locked up for human trafficking."  (*Id.* ¶ 66.)  Shortly after Plaintiffs replied on the Instagram post, contesting the truth of Defendant's accusations, Defendant deleted his comments and blocked Plaintiffs on social media.  (*See id.* ¶¶ 54, 55.)  Defendant's statements prevented Plaintiffs from repairing their reputations and professional relationships, which ultimately interfered with Plaintiffs' existing and prospective business opportunities and deprived Plaintiffs of work.  (*See id.* ¶¶ 8, 10, 12, 42, 68, 70.)  Plaintiffs allege that while they have "already suffered unimaginable loss to their businesses, careers, reputations, finances, mental health, and overall livelihood," they continue to suffer because of Defendant's statements.  (*Id.* ¶ 43.)

### D. Procedural History

The Court previously granted Defendant's motion to dismiss Plaintiffs' Complaint.  (*See* ECF No. 25.)  The Amended Complaint alleges defamation per se and intentional interference with prospective economic advantage.  (Am. Compl. 14–16.)  Defendant now moves to dismiss the entire Amended Complaint.

## II.   DEFENDANT'S MOTION TO DISMISS

### A. Legal Standard

#### 1.  Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction," meaning they can "only adjudicate cases that both the Constitution and Congress authorize them to adjudicate, such as those involving diversity of citizenship, a federal question, or where the United States is a party." *DesignTechnica Corp. v. Swigart L. Grp., APC*, No. 24-CV-1054, 2024 WL 5048906, at *2 (S.D. Cal. Dec. 9, 2024) (citation omitted).  "Federal courts are presumptively without jurisdiction over civil actions, and the burden of establishing the contrary rests upon the

party asserting jurisdiction." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)).

Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A federal court must dismiss an action if it "determines . . . that it lacks subject-matter jurisdiction." Fed. R. Civ. P. 12(h)(3). Rule 12(b)(1) jurisdictional challenges can be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack asserts that the plaintiff's allegations are insufficient on their face to invoke federal jurisdiction. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air for Everyone*, 373 F.3d at 1039). When a motion to dismiss makes a facial challenge, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). Conversely, "in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* (citation omitted).

### 2.  Federal Rule of Civil Procedure 12(b)(6)

A party may also file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted," pursuant to Federal Rule of Civil Procedure 12(b)(6). Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-

25-cv-00867-DMS-BJW

specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If a plaintiff has "not nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." *Id.* at 570.

In reviewing the plausibility of a complaint on a motion to dismiss, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, courts are not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). While the Court has an obligation to construe pro se pleadings liberally, *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010), it may not "supply essential elements of [claims] that were not initially pled," *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

**B. Discussion**

1. Subject Matter Jurisdiction

Federal jurisdiction over this case is based on diversity pursuant to 28 U.S.C. § 1332(a). (Am. Compl. ¶ 19.) Under § 1332(a), jurisdiction exists in cases of complete diversity—where each of the plaintiffs is a citizen of a different state from each of the defendants—and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Because the parties do not dispute that there is complete diversity, the only issue is whether the amount in controversy requirement is met.

"[A]t the pleading stage, allegations of jurisdictional fact need not be proven unless challenged." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016). "To justify dismissal, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010) (citation omitted). Under this standard, a complaint's good

faith allegations as to the amount in controversy "suffice to establish the jurisdictional amount unless it appears legally certain that the amount in dispute is $75,000 or less." *Id.* at 1107; *see also id.* at 1106 (holding amount in in controversy alleged "controls so long as the claim is made in good faith"). The "legal certainty" test "makes it very difficult to secure a dismissal of a case on the ground that it does not appear to satisfy the jurisdictional amount requirement." *Naffe v. Frey*, 789 F.3d 1030, 1040 (9th Cir. 2015).

> Only three situations clearly meet the legal certainty standard: 1) when the terms of a contract limit the plaintiff's possible recovery; 2) when a specific rule of law or measure of damages limits the amount of damages recoverable; and 3) when independent facts show that the amount of damages was claimed merely to obtain federal court jurisdiction.

*Id.* (citations omitted).

The allegations here must show that each plaintiff has a claim for over $75,000. *See Travelers Indem. Co. of Conn. v. Pulte Grp., Inc.*, No. LACV1808994, 2019 WL 1915760, at *7 (C.D. Cal. Apr. 26, 2019) (finding the plaintiffs must each meet the jurisdictional threshold because the claims "do not involve a single title or right" in which the plaintiffs "share a common interest"). Plaintiffs seek general and punitive damages and reasonable costs and expenses, (Am. Compl., Prayer for Relief, ¶¶ i, ii); they allege that each Plaintiff's damages exceed $75,000, (Am. Compl. ¶¶ 20, 22). Defendant argues that it is "preposterous" to believe his comments, published to a "very small group of people," while the Nevada Lawsuit is pending, would cause each Plaintiff over $75,000 in damages. (MTD 9.) Plaintiffs dispute that Defendant's comments were published to a small number of people. Plaintiffs argue that, regardless of the number of "likes" on Defendant's comments, the Instagram post, made by @trail.huntr, remains publicly available and has received over 10,000 "likes" and 607 "shares" to date. (Opp'n 14; Joint Decl. in Supp. of Opp'n ("Joint Decl.") Ex. 1, ECF No. 33-1.) Further, @trail.huntr has over 10,000 followers. (Joint Decl. Ex. 4, ECF No. 33-1.) Thus, there is evidence that the Instagram post and Defendant's comments were published to a large group of people.

25-cv-00867-DMS-BJW

Further, the Amended Complaint alleges that Dusty Button previously earned about $10,000 for one event and more than $200,000 in cumulative sponsorships and professional opportunities. (Am. Compl. ¶ 21.) Similarly, Mitchell Button received over $150,000 for one automotive event. (*Id.* ¶ 23.) In their joint declaration, Plaintiffs state they have worked to restore their personal and professional relationships since 2021, and by early 2025, had resumed communications with sponsors, collaborators, and automotive brands. (Joint Decl. ¶ 10.) They also assert those communications ceased after Defendant's comments in January 2025, causing Plaintiffs to lose professional opportunities. (*See id.* ¶ 11.) In addition to the alleged economic loss, Plaintiffs seek emotional distress and punitive damages. Punitive damages may be available in defamation actions upon a showing of oppression, fraud, or malice, Cal. Civ. Code § 3294, and are therefore included in the amount in controversy calculation, *Bell v. Preferred Life Assur. Soc'y*, 320 U.S. 238, 240 (1943). Punitive damage awards "frequently reach a single-digit multiple of compensatory damages." (*See* Opp'n 25–26 (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003)).) Thus, the Amended Complaint, Opposition, and Plaintiffs' joint declaration "explain why Plaintiffs believe they have suffered more than $75,000 in damages." *Fin. Inst. Prods. Corp. v. LOS Glob. Sys., LLC*, No. 16-CV-00283, 2016 WL 4479577, at *4 (D. Ariz. Aug. 25, 2016).

Defendant does not argue that the terms of a contract limit Plaintiffs' possible recovery or that a specific rule of law or measure of damages limits the amount of damages recoverable. *See Naffe*, 789 F.3d at 1040 (describing "[o]nly three situations" that "clearly meet the legal certainty standard"). Defendant casts doubt on the plausibility of Plaintiff's allegations, (*see* MTD 11 (arguing "[i]t can hardly be plausible to suggest, as Plaintiffs do, that [Defendant] was responsible for the losses they clearly claim originated from the 2021 lawsuit which began destroying them 3 ½ years prior to [Defendant's] alleged defamatory activity")), but does not provide sufficient independent facts that the amount of damages was claimed merely to obtain federal court jurisdiction. The Court's present "task is not to decide whether [Plaintiffs] will actually recover that amount, [but] rather to determine

25-cv-00867-DMS-BJW

whether it is a legal certainty they will not." *Fin. Inst. Prods. Corp.*, 2016 WL 4479577, at *4. On the present record, the Court cannot say with legal certainty that Plaintiffs will recover less than the jurisdictional threshold. As such, the Court declines to dismiss the Amended Complaint on jurisdictional grounds.

### 2. Rule 12(b)(6)

#### a. *Actual Malice*

Defendant also argues that Plaintiffs' defamation claim is not properly pled.[2] (MTD 9.) First, Defendant argues Plaintiffs are public figures, and therefore, must sufficiently plead that the alleged defamatory statements were made with "actual malice." (*Id.* at 9–10.) Assuming Plaintiffs are public figures, the Court finds the Amended Complaint sufficiently pleads "actual malice."

"Actual malice" requires that "the statement must have been made with knowledge of its falsity or with reckless disregard for whether it was false." (*Id.* at 10 (citing *Sanchez v. Bezos*, 295 Cal. Rptr. 3d 903 (Ct. App. 2022)).) Here, Plaintiffs allege Defendant was a long-time fan and former competitor of Mitchell Button in the automotive industry, and was aware of Plaintiffs' reputations in the industry. (Am. Compl. ¶¶ 62, 69, 80.) Further, Defendant reportedly followed an Instagram page, "@WeTheButtons," which provided accurate information about the Nevada Lawsuit. (*Id.* ¶ 7.) Plaintiffs also allege the Nevada Lawsuit was widely publicized and media coverage reported that the case was civil, not criminal. (*Id.* ¶ 5.) Plaintiffs were never arrested, charged with any crime, or jailed in connection with the allegations contained in the Nevada Lawsuit. (*Id.* ¶ 6.) Thus, accepting Plaintiffs' factual allegations as true and construing the pleadings in the light most favorable to the nonmoving party—as this Court is required to do—it is plausible that Defendant made the alleged statements knowing they were false or with reckless disregard for whether they were false.

---

[2] Defendant does not raise a 12(b)(6) argument for Plaintiffs' intentional interference with prospective economic advantage claim.

25-cv-00867-DMS-BJW

### b. Statements

Defendant argues the first comment—the full quote being, "lol locked up for some f*cked up stuff"—is not "a statement about anything" because it is preceded by "lol," an acronym for "laughing out loud." (MTD 10.) Falsely stating someone was incarcerated is a verifiable fact that may constitute defamation. *Cf.* Cal. Civ. Code § 46 (including in the definition of "slander," a "false and unprivileged publication . . . which . . . [c]harges any person with crime, or with having been indicted, convicted, or punished for crime"). Defendant provides no legal authority that the inclusion of "lol" somehow absolves such a verifiable fact from being actionable. Thus, the Court declines to dismiss Plaintiffs' defamation claim for this statement.

Next, Defendant argues the second comment, "it was a shame they weren't good people" is "merely opinion," that does not "imply a provable false assertion of fact" and, therefore, is not actionable. (MTD 10 (citing *John Doe 2 v. Superior Court*, 206 Cal. Rptr. 3d 60 (Ct. App. 2026); *Eisenberg v. Alameda Newspapers, Inc.*, 7 Cal. Rptr. 2d 604 (Ct. App. 1999)).) The Court agrees. This comment expresses an opinion about Plaintiffs' characters, which is not actionable under a defamation claim. *Collins v. Wal-Mart Stores, Inc.*, No. 23-CV-01368, 2026 WL 232364, at *3 (S.D. Cal. Jan. 28, 2026) (holding statement about the plaintiff allegedly not being a good person is "at most 'rhetorical hyperbole' or 'vigorous epithets,'" and not actionable under a defamation claim). And because this statement is not actionable, allowing Plaintiffs to further amend their Complaint is futile. Thus, the Court **GRANTS** the motion to dismiss as to this specific statement without leave to amend; Plaintiffs cannot proceed with their defamation claim under this theory. The remainder of the motion to dismiss, however, is **DENIED**.

### III.    DEFENDANT'S REQUEST FOR JUDICIAL NOTICE

A court may consider "matters of judicial notice" in ruling on a motion to dismiss. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Defendant seeks judicial notice of "the existence, legal effect and status" of several cases in which Plaintiffs were parties to. (Req. 1.) However, because the Court did not rely on these cases when deciding the

25-cv-00867-DMS-BJW

motion to dismiss, the Court **DENIES** Defendant's request for judicial notice. *Mikulsky v. Noom, Inc.*, No. 23-cv-00285, 2024 WL 251171, at *2 n.2 (S.D. Cal. Jan. 22, 2024) (denying the defendant's request for judicial notice of a privacy policy because the Court's analysis under Rule 12(b)(1) did not rely on that policy).

### IV.   CONCLUSION

Based on the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendant's motion to dismiss.  Plaintiffs cannot proceed on their defamation claim under the theory that "shame they were not good people" is actionable.  The remainder of the Amended Complaint stands.  Defendant is hereby **ORDERED** to answer the Amended Complaint within **fourteen (14) days** of the entry of this Order.  The Court further **DENIES** Defendant's request for judicial notice and **VACATES** the OSC.

**IT IS SO ORDERED.**

Dated:  May 13, 2026

Hon. Dana M. Sabraw
United States District Judge

25-cv-00867-DMS-BJW